IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 13-369 |
| EDUARDO APONTE | : | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                                   **February  8, 2022**

Defendant Eduardo Aponte has filed a Pro Se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Because Aponte has failed to satisfy the criteria for obtaining such release under the statute, the Court will deny the motion.

## FACTUAL BACKGROUND

This case arose in November, 2012 when, following a search of the residence he shared with his paramour and young child,[1] Aponte was charged with conspiracy to distribute heroin and five kilograms or more of cocaine, possession and possession with intent to distribute heroin and five kilograms or more of cocaine, conspiracy to cause or attempt to cause a financial institution to fail to file currency transaction reports, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon.   He pled guilty to all of these offenses and was sentenced on April 25, 2014 to 180 months' imprisonment to be followed by 5 years of supervised release, a $3,000 fine and $500 special assessment.[2]

---

[1]  The search yielded 5.956 kilograms of cocaine, 53.8 grams of heroin, a .40 caliber Beretta, a .40 caliber Smith and Wesson 40 VE, a money counting machine, $410,188 in U.S. currency, and $26,000 in 7-11 Western Union money orders.  Both of the weapons had been stolen.
[2]  Aponte thus pled guilty to violations of 21 U.S.C.  § 846, 21 U.S.C. § 841(a)(1), 18 U.S.C.  § 371, 18 U.S.C.  § 924(c) and 18 U.S.C.  § 922(g), respectively.

Aponte now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that his health conditions place him at high risk for serious illness or death from the COVID-19 pandemic.  At the time he filed his motion, Aponte was incarcerated at FCI-Fort Dix in New Jersey and he contracted COVID-19 there in October, 2020.  Aponte recovered from COVID-19 and has since been relocated to FCI Schuylkill in Minersville, PA.  Aponte alleges he suffers from Type 2 diabetes, obesity and hyperlipidemia (high cholesterol) and that these conditions, coupled with the danger of being re-infected with COVID-19 are "extraordinary and compelling" circumstances warranting his release.  Aponte further states he is not and never has been a flight risk, he has "had clear conduct and remained sanction free while at Fort Dix for over 14 months," is "considered a 'model inmate' and a 'role model' by fellow inmates," he now "accepts responsibility for his actions and is extremely remorseful for his conduct," and "has rehabilitated himself through therapy, programming, work and positive activities."  Def.'s Mot. for Comp. Rel. 12, ECF No. 62.  If released, he would live with his mother in Philadelphia and pursue a job opportunity with Executive Shield Security in Willow Grove, PA.  *Id*. at 13.

The Government opposes Aponte's request.  It contends Aponte still poses a danger to the community, has several disciplinary infractions on his prison record, his medical conditions are all under control, he recovered from his bout with COVID-19 without significant repercussions and has since been fully vaccinated.

**LEGAL STANDARDS**

The statute upon which Aponte premises this motion for compassionate release, 18 U.S.C. § 3582(c)(1)(A), reads as follows:

> **(c) Modification of an imposed term of imprisonment. –** The court may not modify a term of imprisonment once it has been imposed except that –
>
> **(1)** in any case –

2

**(A)**  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

> **(i)**  extraordinary and compelling reasons warrant such a reduction; or

> **(ii)**  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; …

The § 3553(a) factors which are applicable here are "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[,] … to afford adequate deterrence to criminal conduct[,] [and] to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(1), (2)(A)–(C).

The Sentencing Commission has yet to update its Policy Statement relative to reductions in terms of imprisonment under § 3582(c)(1)(A) since passage of the First Step Act which amended § 3582(c)(1)(A) to permit individual defendants to bring compassionate release motions on their

3

own behalf.  By its plain language, the Policy Statement set forth at U.S.S.G. § 1B1.13[3] is limited to compassionate release motions initiated by the Bureau of Prisons.  The Policy Statement is therefore not binding on district courts considering defendant-initiated compassionate release motions and, in determining whether extraordinary and compelling reasons exist, courts are free to consider other reasons raised by a defendant that are not specifically contemplated in the Policy Statement.  *United States v. Andrews*, 12 F. 4th 255, 260 (3d Cir. 2021); *United States v. Bayron*, No. 95-338-1, 2021 U.S. Dist. LEXIS 29846, at *8 (E.D. Pa. Feb. 18, 2021).  The Policy Statement, however, "still sheds light on the meaning of extraordinary and compelling reasons," and it therefore continues to provide guidance in deciding § 3582(c)(1)(A) motions.  *Andrews¸* 12 F. 4th at 260.  District courts are vested with discretion in their weighing of the § 3553(a) factors and determining motions for compassionate release. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

---

[3] The U.S.S.G. § 1B1.13 Policy Statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that –
>
> **(1)(A)**  Extraordinary and compelling reasons warrant the reduction; or
>
> **(B)**  The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> **(2)**  The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)**  The reduction is consistent with this policy statement.

The Commentary to the Policy Statement provides that extraordinary and compelling reasons may exist where the defendant is either suffering from a terminal illness, or is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process "which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n. 1B. Additionally, extraordinary and compelling reasons may exist where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," *id,* cmt. n.1B, or where the caregiver of a defendant's minor children dies or becomes incapacitated, or a defendant's spouse or registered partner for whom the defendant would be the only caregiver becomes incapacitated, *id.,* cmt. n. 1(C).  Finally, the Policy Statement also contains a catchall provision giving "the Director of the BOP the authority to determine if 'there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with' the other categories."  *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396-397 (E.D. Pa. 2020) (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)).  Under the Policy Statement, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason."  U.S.S.G. § 1B1.13 cmt. n.3.  The defendant bears the burden of proof by a preponderance of the evidence on motions for compassionate release.  *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020); *United States v. Adeyemi,* 470 F. Supp. 3d 489, 501 (E.D. Pa. 2020).

**DISCUSSION**

Aponte has satisfied the administrative requirement that he first ask the Bureau of Prisons to file a compassionate release motion on his behalf insofar as he submitted a request to the Warden

5

at FCI Fort Dix on July 8, 2020.  That request was denied on August 10, 2020 and Aponte filed this pro se motion on December 28, 2020.

In ascertaining whether extraordinary and compelling reasons are presented in this case, judicial notice is taken that since March, 2020, the COVID-19 pandemic has sickened millions of people worldwide, nearly 75 million of whom are in the United States.  There have been nearly 882,000 deaths in the U.S. alone.  www.covid.cdc.gov/covid-data-tracker/#datatracker-home. Despite the fact that some 80.1% of people 5 years and older have received at least one shot of a COVID-19 vaccine,  community transmission remains "high."  www.covid.cdc.gov/covid-data-tracker/#datatracker-home.   Although the COVID-19 vaccines are effective at preventing most infections, they are not 100% effective.  Fully vaccinated people who get breakthrough infections, however, tend to have less severe symptoms and are less likely to suffer severe illness than those who are not vaccinated.   www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html.

According to the CDC, there are a number of medical conditions which put people at greater risk of adverse outcomes from COVID-19.  These include: cancer, chronic kidney, liver and lung diseases, diabetes, heart conditions like heart failure, coronary artery disease, cardiomyopathies, and possibly hypertension, having an immune-compromised state/weakened immune system and obesity.   www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.   The most recent medical records provided for Aponte indicate his current diagnoses include diabetes, hyperlipidemia, chronic pain in both feet,[4]

---

[4] Aponte's records reference several podiatric conditions: flat foot, hammer toe, corns, calluses and a condition causing thickened and discolored nails.

and that he is nearly obese.[5]  Exhibits to Gov't.'s Resp. in Opp. to Def.'s Mot. for Comp. Rel., ECF No. 64.  Aponte thus suffers from two of the conditions listed in the CDC's "higher risk" categories.

However, Aponte's records also reflect he is receiving regular treatment and care for these conditions in the prison setting and his conditions are under control.  Presently, Aponte takes Metformin 500 mg, Atorvastin 20 mg and low dose (81 mg) Aspirin daily for diabetes and cholesterol management, and he has received ibuprofen and special shoes to address the foot pain. Although he tested positive for COVID-19 in November, 2020, his symptoms were mild, consisting of head and body aches, intermittent shortness of breath, fatigue and chills, and Aponte has fully recovered.  He has also since received two doses of the Pfizer COVID-19 vaccine.

This Court has previously recognized that "COVID-19 poses a unique challenge to the prison system." *United States v. Nunez,* 483 F. Supp. 3d 280, 283 (E.D. Pa. 2020).  In response to the pandemic, the federal Bureau of Prisons has modified operations within its facilities to mitigate the risk and spread of COVID-19.  Mitigation measures include restricting and/or limiting visits such that all are either suspended altogether or are non-contact; restricting the number of visitors allowed, and decreasing the length and frequency of visits; mandating testing and masking of all inmates, staff, and visitors; maximizing social distancing; and mandating frequent cleaning of all facilities, daily symptom and temperature checks of inmates, and quarantining of all new inmates. www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.   The operational status of each institution is determined based on a number of health indicators, including the level of transmission within each institution and in the surrounding community.  Although mitigation

---

[5]  The CDC defines obesity as having a body mass index (BMI) of greater than or equal to 30 kg/m and less than 40 kg/m.  Overweight is defined as having a BMI of greater than or equal to 25 kg/m but less than 30 kg/m.  Aponte has a BMI of 29.1.

measures have been in place throughout the pandemic, the particular interventions in place at a given institution vary based on the institution's operational status. www.bop.gov/coronavirus/covid19_status.jsp.

Although Aponte was incarcerated at FCI Fort Dix when he filed this motion, he has since been relocated to FCI Schuylkill in Minersville, PA. FCI Schuylkill has a total population of 968 male inmates. Presently, it has 153 COVID-19-positive inmates and 3 COVID-19 positive staff members and is operating at level 3, the most restrictive operations level requiring enhanced and frequent cleaning of all areas, masking of all inmates and staff, and daily symptom checks of any and all inmates and staff leaving and re-entering the facility. Normal operations and all visiting have been suspended until further notice. There have been no deaths of either inmates or staff to date. www.bop.gov/locations/institutions/sch/.

In view of the ongoing operational restrictions and precautions implemented in the facility where Aponte is housed, the health care he is receiving, his prior full recovery from the virus, and his full vaccination status, the Court finds that Aponte is not in imminent danger of suffering severe illness or death should he again contract the disease[6] and his health conditions do not present extraordinary and compelling reasons for compassionate release. However, in determining whether the requisite extraordinary and compelling circumstances are presented here, the Court must also consider the sentencing factors articulated in 18 U.S.C. § 3553(a).

The record reflects Aponte was 31 years old at the time he committed the crimes at issue in this case. There is no question that his crimes were serious – Aponte was involved in significant

---

[6] See, e.g., *United States v. Camara*, No. 21-1759, 2022 U.S. App. LEXIS 466, *4 (3d Cir. Jan. 7, 2022) (holding that even where application of U.S.S.G. § 1B1.13 was erroneous, "any error is harmless where [the defendant] does not suffer from any condition that puts him at increased risk for COVID-19 and a vaccine is available to him.")

drug trafficking activity, which went on for some time, as evidenced by the more than $400,000 in cash and money orders, stolen weapons and drugs recovered from the home he shared with his girlfriend and very young child.  In committing the crimes for which he was sentenced in this case, Aponte voluntarily became involved with a very dangerous drug organization and in doing so, consciously put his family at risk.  Further, Aponte was dealing in kilograms, not ounces, of cocaine and heroin and by facilitating the distribution of such large quantities of drugs into the community, Aponte posed a grave threat.  This was not Aponte's first such offense either. Previously, he had been convicted in both state and federal court for manufacturing, delivering or possessing with intent to deliver a controlled substance and conspiracy to manufacture, deliver or possess with intent to manufacture or deliver controlled substances, including more than 500 grams of cocaine in a school zone for which he was sentenced to terms of imprisonment of 3-6 years and 60 months, respectively.  Aponte had thus been involved in criminal activity for most of his adult life.

The Court carefully considered all of these factors in sentencing Aponte in 2014.  In re-considering them now, the Court again finds Aponte's criminal history and his characteristics, together with the nature and circumstances of the crimes in this action warranted the sentence imposed and that the sentence properly reflected this background and was appropriate to promote respect for the law, protect the public from Aponte's commission of further crimes, deter future criminal conduct and punish him.  He has served roughly one-half of his sentence to date and is now just 41 years old.  These facts simply do not militate in favor of Aponte's release at this time. And, while Aponte has taken advantage of the educational opportunities in the prison setting by taking and completing numerous courses and earning his GED and the Court does not doubt the sincerity of his remorse for his criminal past, rehabilitation is not, in and of itself, a sufficient

reason to grant compassionate release.  In weighing all of the foregoing factors, the Court simply cannot find that compassionate release is appropriate in Aponte's case.  His motion is therefore denied.

An appropriate Order follows.

BY THE COURT:


/s/ Juan R. Sánchez
_____
Juan R. Sánchez,          C.J.